IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MCDANIELS, | No. C 06-2558 CW |
| Plaintiff, | TENTATIVE ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| HOSPICE OF NAPA VALLEY, a corporation; and DOES 1-50, | |
| Defendants. | |

Defendant Hospice of Napa Valley moves to stay proceedings in this action and to compel arbitration, or in the alternative to dismiss it under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). Plaintiff opposes the motion. The matter was taken under submission on the papers.[1] Having considered all of the

---

[1] As Defendant notes, Plaintiff's opposition was filed on May 30, 2006, several days after her May 26, 2006 deadline. Plaintiff did not move for an extension of time to file her opposition, as required by Civil Local Rule 6-3, nor did she provide any explanation for her belated filing. In addition, the form of Plaintiff's opposition violates Local Rule 7-4(a)(2) by failing to include a table of contents and table of authorities.
Defendant asks the Court to strike Plaintiff's opposition as a

1 papers filed by the parties, the Court is inclined to deny
2 Defendant's motion to compel arbitration and deny in part
3 Defendant's motion to dismiss.

BACKGROUND

Plaintiff, an African American female, worked as an administrative assistant for Defendant from July, 1997 to July, 2005. Complaint ¶ 3. Over the course of her tenure, Plaintiff's roles and responsibilities included serving as a receptionist, human resources assistant, personnel records clerk and personnel and benefits records clerk. Id. ¶¶ 24-25. She was terminated on July 29, 2005, while on a leave of absence due to a foot injury. Id. ¶ 33.

Plaintiff alleges that Defendant used a system of subjective and arbitrary decision-making that allowed racial biases and stereotypes to affect employment decisions, and that Defendant intentionally discriminated against her in connection with promotion, compensation, discipline, termination, retaliation and harassment. Id. ¶ 9.

Plaintiff filed this action in federal court alleging ten

---

sanction. The Court finds that striking Plaintiff's opposition as a sanction is unwarranted at this time. Instead, the Court will allow Defendant, if it chooses, to file a five page surreply in response to this tentative order to cure the shortened time it had to file a reply. If, after receiving the surreply, the Court is inclined to alter its proposed ruling, it will allow Plaintiff to file a supplemental response. If Defendant chooses not to file a surreply, this tentative order will be adopted in full.

Plaintiff and her counsel are warned that they must abide by the Court's deadlines and the Civil Local Rules. In the future, if Plaintiff fails to file documents on time, without seeking an extension as required by the Local Rules, the Court may refuse to consider Plaintiff's late filing as a sanction.

2

1 causes of action against Defendant: (1) a pattern or practice of
2 racial discrimination in violation of 42 U.S.C. § 1981; (2) a
3 pattern or practice of racial discrimination in violation of Title
4 VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.;
5 (3) a pattern or practice of racial discrimination in violation of
6 California Government Code § 12940 et seq.; (4) failure to maintain
7 an environment free from harassment in violation of California
8 Government Code § 12940; (5) retaliation in violation of California
9 Government Code § 12940(f); (6) failure to promote in violation of
10 California Government Code § 12940 and 42 U.S.C. § 2000 et seq.;
11 (7) breach of implied contract; (8) breach of the implied covenant
12 of good faith and fair dealing; (9) intentional infliction of
13 emotional distress; and (10) negligent infliction of emotional
14 distress.

15   Defendant's Employee Handbook sets forth the "terms and
16 conditions of employment for all full-time, part-time, per diem,
17 and temporary employees."  Def.'s Ex. A, Hospice of Napa Valley,
18 Inc., Employee Handbook, Rev. Sept. 2001 (hereinafter Employee
19 Handbook), "About This Handbook" (unpaginated introductory
20 section).  Defendant "reserve[d] the right to add, modify or delete
21 provisions of this Handbook or any other document, or the policies
22 and procedures on which they may be based, at any time, without
23 advance notice."  Id.

24   The arbitration section of the Employee Handbook provides, in
25 full,
26     Any controversy, dispute or claim (including sexual
       harassment) (hereinafter 'dispute') shall be determined in
27     accordance with the dispute resolution procedures established
28
                                    3

in this paragraph and the Federal Arbitration Act.

Any dispute will be resolved, if possible, through the employee grievance procedure as outlined in the Employee Handbook.

If a dispute cannot be resolved through the grievance procedures, the disputes shall be determined by arbitration in accordance with the arbitration procedures established in this section and the Federal Arbitration Act.  All arbitration procedures will occur in the county in which the agency is located.

    1.  The employee must initiate arbitration by providing the agency with a written demand to arbitrate.  Prior to initiating these arbitration procedures, the employee must have initiated and completed in a timely manner the grievance procedure outlined in the Employee Handbook.  Failure to timely initiate and complete the grievance procedure or to timely initiate the arbitration procedure shall be deemed a waiver of the employee's dispute.

    2.  Within 21 calendar days of receipt of a written demand to arbitrate, the parties shall select an arbitrator to hear the dispute.  In the event that the parties are unable to agree upon an arbitrator, either party may, within 30 calendar days of the written demand for arbitration, petition the presiding judge of the local state trial court having jurisdiction over the agency for an appointment of a retired judge to serve as the arbitrator.

    3.  The arbitrator will hold a hearing at which the parties to the dispute may submit evidence, including examining witnesses.  The arbitrator may issue subpoenas to compel the testimony of third parties and the production of documents.  However, there shall be no pre-hearing discovery.  Testimony shall be taken under oath and the parties may not be represented by legal counsel.

    4.  The arbitrator shall issue a written decision within 21 calendar days of the conclusion of the hearing.  This decision shall be final and binding upon the parties.  Therefore, the employee may not initiate a lawsuit or arbitration proceeding that is in any way related to the dispute.  The decision of the arbitrator may be entered as a judgment in a court of competent jurisdiction.  The arbitrator shall not have the authority to amend, modify, or delete any provision of this policy or any agency policy.

    5.  The fee of the arbitrator shall be split equally between the parties.

In the event that any paragraph, or provision within a

4

>paragraph, of the Grievance and Arbitration Procedure is determined to be illegal or unenforceable, such determination shall not affect the validity or enforceability of the remaining paragraphs, or provisions within a paragraph, all of which shall remain in full force and effect.

Employee Handbook 7-3. On November 1, 2001, Plaintiff signed a pre-printed acknowledgment that she had received the Employee Handbook and that she would be subject to its terms. Def.'s Ex. B, Hospice of Napa Valley, Inc., Employee Manual Acknowledgment. The signed acknowledgment states, in part,

>In the event that I am dissatisfied or disagree with any action or failure to act by Hospice of Napa Valley, Inc. or its agents, I agree to submit the matter to the agency's Grievance and Arbitration Procedures, which are contained in the Handbook, for final and binding resolution.

In support of her opposition to Defendant's motion to compel arbitration, Plaintiff declares that she "was forced to sign the Employee manual acknowledgment form in order to continue working at Hospice."[2] McDaniels Decl. ¶ 3. She says that she "was not offered the opportunity to opt out of the arbitration agreement nor were any of its terms negotiable," that she "did not freely accept the terms of the arbitration clause," and that she "only signed the acknowledgment of receipt in order to keep [her] job." Id. ¶¶ 3, 6. Plaintiff declares, "It was common knowledge at Hospice that if an employee refused to sign the acknowledgment of receipt then that employee could not work at Hospice." Id. ¶ 7.

To support its reply, Defendant submits an exhibit entitled "Documentation of Employee Counseling Session" and signed by

---

[2]Plaintiff also explains that she was required to sign an earlier arbitration agreement when she first was hired by Defendant. McDaniels Decl. ¶ 2.

5

1  Plaintiff on December 28, 2004.  The printed document summarizes an
2  counseling session between Plaintiff and Sandy Gilbert.  Above her
3  signature, Plaintiff wrote by hand, "I don't agree with the account
4  of my statements."

## LEGAL STANDARDS

I.  Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that controversies between the parties shall be settled by arbitration are "valid, irrevocable, and enforceable, save on such grounds as exist in law or at equity for revocation of any contract."  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court in which an action has been commenced for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4.  If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id.  The FAA reflects a "liberal federal policy favoring arbitration agreements."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Arbitration agreements properly formed in connection with contracts of employment are covered by the FAA and therefore are generally valid and enforceable unless the employee is a transportation worker.  9 U.S.C. § 1; Circuit City Stores v. Adams,

6

532 U.S. 105, 119 (2001).

II. Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged

7

1 pleading.  Id. at 296-97.

2 DISCUSSION

I. Motion to Compel Arbitration

Defendant moves to compel arbitration in accordance with the FAA and the arbitration provision of the Employee Handbook. Plaintiff opposes the motion on the ground that the arbitration provision is unenforceable because it is procedurally and substantively unconscionable.

A. Applicable Law

In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts." Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)), cert. den., 535 U.S. 1112.  "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements."  Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); see also Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931 (9th Cir. 2001) (applying Montana contract law to determine validity of arbitration agreement).  "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . ."  Cal. Civ. Code § 1670.5(a).

Under California law, unconscionability has both a procedural and a substantive component.  Although both procedural and substantive unconscionability must be present before a court will

8

refuse to enforce a contract, they need not be present to the same degree; "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000).

> The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.

Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796, 1803 (1993) (internal citations omitted); see also American Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (1996) ("Indicia of procedural unconscionability include oppression . . . and surprise . . .").

A contract or clause is procedurally unconscionable if it is a contract of adhesion. Circuit City Stores v. Adams, 279 F.3d at 893 ("The [arbitration agreement] is procedurally unconscionable because it is a contract of adhesion."); see also Flores v. Transamerica Homefirst, Inc., 93 Cal. App. 4th 846, 853 (2002) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins.

9

1  Co., 188 Cal. App. 2d 690, 694 (1961)).

2  In Armendariz, the California Supreme Court found an
3  arbitration contract to be procedurally unconscionable because
4  "[i]t was imposed on employees as a condition of employment and
5  there was no opportunity to negotiate."  24 Cal. 4th at 114-15.
6  The court explained that "the economic pressure exerted by
7  employers on all but the most sought-after employees may be
8  particularly acute, for the arbitration agreement stands between
9  the employee and necessary employment, and few employees are in a
10 position to refuse a job because of an arbitration requirement."
11 Id.

12 Substantive unconscionability focuses on the harshness and
13 one-sided nature of the substantive terms of the contract.  A & M
14 Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982).  An
15 adhesive agreement to arbitrate will satisfy this general standard
16 for substantive unconscionability if the agreement lacks a "modicum
17 of bilaterality."  Armendariz, 24 Cal. 4th at 117.  Whether an
18 arbitration agreement is sufficiently bilateral is determined by an
19 examination of the actual effects of the challenged provisions.
20 Ellis, 18 Cal. App. 4th at 1803-04 ("substantive unconscionability
21 . . . refers to an overly harsh allocation of risks or costs which
22 is not justified by the circumstances under which the contract was
23 made.")

24 In addition, an employment agreement that requires the
25 arbitration of unwaivable statutory claims is lawful only if it
26 meets the following five "minimum requirements":

27 (1) provides for neutral arbitrators, (2) provides for more

10

>     than minimal discovery, (3) requires a written award,
>     (4) provides for all of the types of relief that would
>     otherwise be available in court, and (5) does not require
>     employees to pay either unreasonable costs or any arbitrators'
>     fees or expenses as a condition of access to the arbitration
>     forum.

Armendariz, 24 Cal. 4th at 102 (quoting Cole v. Breuns Intern. Sec. Serv., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).[3]

B. Analysis

    1. Procedural Unconscionability

Plaintiff declares that she had no opportunity to negotiate the arbitration provision of the Employee Handbook, and that she was forced to sign the Employee Manual Acknowledgment form in order to remain at her job. Defendant argues that Plaintiff's handwritten note on the "Documentation of Employee Counseling Session" form shows that Plaintiff was "not shy" about expressing her opinions to Defendant. However, Defendant fails to rebut Plaintiff's claim that she had no opportunity to negotiate the arbitration procedures in the Employee Handbook, in particular, and that signing the acknowledgment was a condition of employment. Cf. Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (holding arbitration agreement not procedurally unconscionable under California law where employee was offered opportunity to opt-out, and declined). Based on the facts

---

[3] Defendant suggests that "an arbitration procedure passes muster under Armendariz" if it meets these five minimum requirements. Def.'s Reply at 3. This statement mischaracterizes Armendariz, where the California Supreme Court, after evaluating the five minimum requirements applicable to mandatory employment arbitration agreements, went on to address other more general issues that also "fall under the rubric of unconscionability." 24 Cal. 4th at 113.

11

presented by Plaintiff, the Court finds that the arbitration agreement falls within the <u>Armendariz</u> definition of a procedurally unconscionable contract.

2. Substantive Unconscionability

As Defendant notes, a contract that is procedurally unconscionable may still be enforceable if it is not also substantively unconscionable.

Here, the Court finds that the arbitration agreement is substantively unconscionable based on several factors. The Employee Handbook expressly disallows any discovery prior to the arbitration hearing. It grants Defendant the unilateral power to "add, modify or delete" provisions, including the arbitration provision, "at any time, without advance notice." Moreover, nothing in the Employee Handbook prohibits Defendant from amending or terminating arbitration procedures even once an employee has initiated a grievance. Defendant argues that this unilateral power is irrelevant because it did not exercise its power to modify or delete the arbitration provision. However, an evaluation of whether a contract of adhesion is unconscionable "turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." <u>Armendariz</u>, 24 Cal. 4th at 117 (quoting <u>A & M Produce</u>, 135 Cal. App. 3d at 487). By allowing itself, but not employees, to modify or cancel the arbitration provision at any time and without advance notice, Defendant has created an unjustified, one-sided term. Other portions of the Employee Handbook's arbitration provision also suggest a lack of mutuality by requiring an employee, but not Defendant, to initiate arbitration by providing a

12

written demand; and providing that employees, but not Defendant, waive their dispute if they fail timely to initiate and complete the grievance and arbitration procedures. Employee Handbook, 7-3 ¶ 1. In addition, the arbitration procedure specifies that "the employee [but not Defendant] may not initiate a lawsuit or administrative proceeding that is in any way related to the dispute." Id. ¶ 4. Although it may be the case that the drafters did not contemplate the use of the arbitration procedure to resolve a grievance initiated by Defendant, as the California Supreme Court noted,

> The fact that it is unlikely an employer will bring claims against a particular type of employee is not, ultimately, a justification for a unilateral arbitration agreement. It provides no justification for categorically exempting employer claims, however rare, from mandatory arbitration.[4]

Armendariz, 24 Cal. 4th at 121. Defendant has offered no justification for the unilateral aspects of its arbitration agreement; indeed, it has denied Plaintiff's claim that the agreement is unilateral.

Defendant concedes that paragraph five of the Employee Handbook's arbitration provision, which requires employees to pay for half of the costs of arbitration, fails to meet the minimum requirements set forth in Armendariz. Defendant asks the Court to sever that portion of the contract. California Civil Code § 1670.5 provides,

---

[4] By the same reasoning, Plaintiff's argument that the arbitration agreement is one-sided because it applies only to "employment related" legal disputes is unpersuasive, even if employees are more likely to initiate employment-related grievances than employers.

13

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

In exercising this discretion, courts are to consider whether the "central purpose of the contract is tainted with illegality" or whether any illegality is collateral. Armendariz, 24 Cal. 4th at 124. Because the Court finds that the fee-splitting is not the only portion of the arbitration provision that is tainted with unconscionability, and because it would effectively have to reform the contract in order to remove the unconscionable taint (e.g., by expanding certain terms to apply to Defendant as well as employees), it finds that the arbitration provision of the Employee Handbook is unenforceable in its entirety. See id. at 124-25.

Therefore, the Court tentatively denies Defendant's motion to compel arbitration.

II.   Motion to Dismiss

Defendant moves to dismiss under Rule 12(b)(6) Plaintiff's federal claims, on the grounds that Plaintiff has failed to state a claim under 42 U.S.C. § 1981, and has failed to exhaust administrative remedies as required to bring her Title VII claim. The Court addresses these issues in turn.

A.   42 U.S.C. § 1981

Title 42 U.S.C. § 1981 provides, in part, "[a]ll persons in the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined to include "the making,

14

performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b).

Defendant argues that because Plaintiff fails to allege the existence of an employment contract for a definite period of time, she was an at-will employee under California law, and thus cannot state a claim for relief under § 1981. Plaintiff maintains that a cause of action under § 1981 is available even though she was an at-will employee.

The parties agree that there is no Ninth Circuit binding authority on this question. See Johnson v. Kahi Mohala Hosp., Inc., 1999 WL 362970 (9th Cir. May 28, 1999) (affirming grant of summary judgment on § 1981 claim for at-will employee "even if we were to decide that at-will employment is actionable under this statute").

Defendant urges the Court adopt the reasoning in Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1034-35 (7th Cir. 1998), where the Seventh Circuit suggested in dicta that the plaintiff's at-will employment status did not provide adequate support for her § 1981 claim. Defendant then claims that there is a "clear circuit split" on this issue. Def.'s Reply at 7.

Having reviewed the relevant case law, the Court finds no evidence of a circuit split. In 2000, the Second Circuit decided that it would "join the emerging consensus of the district courts in this circuit, and the other circuit courts of appeal that have squarely addressed this issue, to hold that an at-will employee may sue under § 1981 for racially discriminatory termination." Lauture

15

v. Int'l Bus. Machs. Corp., 216 F.3d 258, 260 (2nd Cir. 2000) (citing, inter alia, Perry v. Woodward, 199 F.3d 1126, 1133 (10th Cir. 1999), cert. den., 529 U.S. 1110 (2000); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir. 1999); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir. 1998), reh. and suggestion for reh. en banc den., Dec. 7, 1998); see also Skinner v. Maritz, Inc., 253 F.3d 337, 342 (8th Cir. 2001) (holding that an employer may not violate § 1981 by discharging an at-will employee for a racially discriminatory reason). Indeed, since deciding Gonzalez in 1998, the Seventh Circuit itself has held that an at-will employee could state a claim under § 1981. Walker v. Abbott Labs., 340 F.3d 471, 478 (7th Cir. 2003). The court noted that its statements in Gonzalez regarding the applicability of § 1981 to at-will employees were "plainly dicta," and reasoned,

> we find it difficult to believe that Congress would have sought to exclude from § 1981's protections the large portion of the employees in this country who work under at-will employment contracts. As other courts have noted, excluding at-will employees from § 1981 protection 'would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws.'

Id. at 477 (quoting in part Fadeyi, 160 F.3d at 1052).[5]

In its reply, Defendant offers no persuasive reason why the Ninth Circuit would not follow the holdings of its sister circuits. It is true that the Ninth Circuit has held that under Washington

---

[5] The Court notes that Defendant's initial citation to Gonzalez, without acknowledging the cited dicta's subsequent abrogation by Walker, misstates Seventh Circuit authority, and reflects either a failure to investigate the relevant law or a failure to meet Defendant's duty to the Court correctly to state the law.

16

State law, a public employee's job description did "not create contractual expectancies," and therefore the public employer's alleged violation of the job description was not actionable under § 1981. Judie v. Hamilton, 872 F.2d 919, 923 (9th Cir. 1989); see also Barefield v. Cal. State Univ. Bakersfield, 2006 WL 829122 (E.D. Cal. Mar. 28, 2006) (finding California State employment to be statutory and that State employee therefore could not state a claim under § 1981). However, the Court sees no reason to apply Judie to preclude Plaintiff, who was not a public employee, from stating a claim under § 1981. See Walker, 340 F.3d at 476 (noting that under the Restatement's definition of a contract, at-will employment creates a contract because the employer promises to pay the employee for certain work).

Therefore, the Court tentatively denies Defendant's motion to dismiss Plaintiff's § 1981 claim. Defendant's motion to dismiss the entire complaint for lack of subject matter jurisdiction, based on Plaintiff's alleged failure to state a federal claim, is likewise tentatively denied.

B.   Exhaustion of Administrative Remedies

Before bringing an employment discrimination action under Title VII, an employee must first exhaust administrative remedies by filing a complaint with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e-5; Brown v. General Servs. Admin., 425 U.S. 820, 832-33 (1976); Stache v. Int'l Union of Bricklayers and Allied Craftsman, AFL-CIO, 852 F.2d 1231, 1233 (9th Cir. 1988). "[S]ubstantial compliance with the presentment of discrimination complaints to an appropriate administrative agency"

17

is a prerequisite to the district court's exercise of jurisdiction over a plaintiff's Title VII claims. Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001).

Plaintiff does not allege in her complaint any exhaustion of administrative remedies. With her opposition, however, she submits copies of an administrative complaint filed with California's Department of Fair Employment and Housing (DFEH) and a DFEH right-to-sue letter. McCoy Decl. Exs. B and C. Plaintiff does not show that the filing of a DFEH complaint fulfills the requirements of 42 U.S.C. § 2000e-5. See Roman v. County of Los Angeles, 85 Cal. App. 4th 316, 102 (2000) (finding that exhaustion of State administrative remedies does not fulfill exhaustion requirement for federal claim); cf. 29 C.F.R. § 1626.10(c) (providing that charges under the Age Discrimination in Employment Act received by one agency under worksharing agreement shall be deemed received by the other agency).

The Court therefore grants Defendant's motion to dismiss Plaintiff's Title VII claim. Plaintiff is granted leave to amend to allege, if she can do so truthfully and without contradicting the original complaint, that she has substantially complied with the exhaustion requirement of 42 U.S.C. § 2000e-5.

## CONCLUSION

For the foregoing reasons, the Court is inclined to DENY Defendant's motion to compel arbitration and DENY its motion to dismiss Plaintiff's 42 U.S.C. § 1981 claim (Docket No. 4). Defendant may file a surreply of no more than five pages within one week from the date of this order. If Defendant does not do so, the

tentative order will be adopted in full.

The Court GRANTS the motion to dismiss with respect to Plaintiff's Title VII claim, with leave to file, within two weeks from the date of this order, an amended complaint in accordance with the instructions above.

IT IS SO ORDERED.

Dated: 7/19/06

CLAUDIA WILKEN
United States District Judge

19